**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| GINA BELLENGER, individually and on behalf all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ACCOUNTS RECEIVABLE MANAGEMENT, INC., and RADIUS GLOBAL SOLUTIONS, LLC.,<br><br>Defendants. | ) | **CASE NO.**<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff, GINA BELLENGER, individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief as follows:

## NATURE OF ACTION

1. This case involves activities conducted by Defendants Accounts Receivable Management, Inc. ("ARM") and Radius Global Solutions, LLC ("Radius") in contacting individuals believed to be its debtors through use of prerecorded messages and automated calls in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., and the Federal Communications Commission ("FCC" or "Commission") rules promulgated thereunder, 47 C.F.R. § 64.1200 (hereinafter referred to as the "TCPA").

2. Defendants have violated the TCPA by making calls to Plaintiff and Class Members using an "automatic telephone dialing system" and an "artificial or prerecorded voice" as described in 47 U.S.C. § 227 (b)(1), without Plaintiff's and Class Members' prior express consent within the meaning of the TCPA.

3. Plaintiff brings this action for injunctive relief and statutory damages, all arising from the illegal activities of Defendants, which used pre-recorded and automatically dialed messages to solicit payment from individuals it presumably believed to be debtors.

**JURISDICTION AND VENUE**

4. This matter in controversy exceeds $5,000,000, as each member of the proposed Class of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Accordingly, this Court has jurisdiction pursuant to § 1332(d)(2). Further, Plaintiff alleges a national class, which will result in at least one Class member belonging to a different state. Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

5. This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

6. This Court has personal jurisdiction over Defendants because the conduct at issue in this case occurred, among other locations, in Florida.

7. Venue is proper because a substantial portion of the events complained of occurred in this District.

**PARTIES**

8. Plaintiff Gina Belleneger is, and at all times mentioned herein was, an individual citizen of the State of Florida residing in the City of Tampa.

9. Defendant Accounts Receivable Management, Inc. ("ARM") is a New Jersey corporation with its principal place of business in Thorofare, New Jersey. ARM is a debt collection agency.

10. Defendant Radius Global Solutions, LLC ("Radius") is Minnesota limited liability company with its principal place of business in Edina, Minnesota. Radius is a collection agency. In 2014, Radius acquired ARM.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227**

11. In 1991, Congress enacted the TCPA[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

12. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party. The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."[2]

13. This statutory language dictates that "the term 'automatic telephone dialing system' means equipment which has the capacity—(1) to store numbers to be called *or* (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, No. 14-56834, 2018 WL 4495553, at *8 (9th Cir. Sept. 20, 2018) (emphasis supplied).[3]

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*

[2] 47 U.S.C. § 227(b)(1)(A)(iii).

[3] In the past, the FCC has held that this definition is satisfied when a dialing system has the capacity to call "a given set of numbers" or when "dialing equipment is paired with . . . a database of numbers." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, ¶ 133 (2003); *see also In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (F.C.C. 2008) (rejecting argument that a dialing system "meets the definition of

14. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[4]

15. The 2003 FCC order defined a predictive dialer as "an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call."[5] The FCC concluded that "[t]he basic function of such equipment . . . [is] the capacity to dial numbers without human intervention."[6] A 2008 Declaratory Ruling "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."[7] And in yet another order issued in 2012, the FCC again reiterated that the TCPA's definition of an ATDS "covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists."[8]

---

autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists" and reasoning that "the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective").

[4] Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

[5] *Id*. at 14,143 n. 31.

[6] *Id*. at 14,092.

[7] In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 ("2008 FCC Declaratory Ruling"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

[8] In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 FCC Rcd. 15391, 15399 (2012).

In 2018, a decision struck down portions of a 2015 FCC Order, but "the prior FCC Orders are still binding."[9]

16. Courts have also held that, based on the TCPA's statutory language, a predictive dialing system constitutes an ATDS under the TCPA. *See, e.g., Marks*, 2018 WL 4495553 ("Although Congress focused on regulating the use of equipment that dialed blocks of sequential or randomly generated numbers—a common technology at that time—*language in the statute indicates that equipment that made automatic calls from lists of recipients was also covered by the TCPA*.") (emphasis supplied); *accord Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638-39 (7th Cir. 2012).

17. Further, courts have long held that that a "called party" under the TCPA is the recipient of the call, not the party the caller was intending to reach.[10]

18. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party.[11] The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."[12]

19. In a portion unaffected by the D.C. Circuit, the 2015 FCC Order held that consumers may revoke consent through reasonable methods. Thus, consumers may revoke consent through any reasonable method, including orally: "[c]onsumers generally may revoke, for

---

[9] *Reyes v. BCA Fin. Servs., Inc.*, Case No. 16-24077-CIV, 2018 WL 2220417, at *11 (S.D. Fla. May 14, 2018).

[10] *See, e.g., Osorio v. State FAssetCare Bank, F.S.B.*, 746 F.3d 1242, 1251 (11th Cir. 2014); *Soppet v. Enhanced Recovery Co., LLC*,, 679 F.3d 637, 638-39 (7th Cir. 2012).

[11] *2008 FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).

[12] *Id.*

example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities."[13]

20. A single call using both a prerecorded voice and an autodialer constitutes two violations of the TCPA, even if both violations arose from the same call. *See Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101 (11th Cir. 2015).

## FACTUAL ALLEGATIONS

21. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

22. Beginning in or around November of 2018, Plaintiff began receiving numerous autodialed and pre-recorded calls on her cellular phone ((XXX) XXX-2511) from ARM. When Plaintiff did not pick up the phone, ARM left a prerecorded voicemail informing Plaintiff that she should call back at 888-548-8829. There was at least one number that appeared in Plaintiff's caller ID for these calls: 888-548-8829. This number appears to be associated with ARM. For example, when this number is called, a representative will answer the call and acknowledge he/she is employed with ARM. In addition, an Internet search of the aforementioned number is associated with ARM.[14] Most recently, Plaintiff received calls from ARM at the aforementioned number on December 10, 2018 at 12:50 PM and December 18, 2018 at 3:07 PM.

23. Plaintiff requested that the calls stop many times. ARM continued to call her cellular phone anyway.

---

[13] 2015 Order at (¶ 64).

[14] *See* https://www.bbb.org/us/fl/miramar/profile/collections-agencies/accounts-receivable-management-inc-0633-31000015.

24. ARM is, and at all times mentioned herein was a "person", as defined by 47 U.S.C. § 153(39).

25. In receiving unwanted and unsolicited calls on her cellular telephone, Plaintiff suffered concrete harm in the form of lost time spent fielding the unwanted calls and attempting to get ARM to stop the calls, loss of use of her cellular telephone as the calls came in, and the invasion of privacy and intrusion upon her seclusion.

26. All telephone contact made by ARM to Plaintiff on her cellular telephone occurred via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and used "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A).

27. The telephone numbers on which ARM used to contact Plaintiff were an "artificial or prerecorded voice" made by an "automatic telephone dialing system," and were assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

28. Plaintiff did not provide her "prior express consent" allowing ARM to place telephone calls to Plaintiff's cellular phone utilizing an "artificial or prerecorded voice" and placed by an "automatic dialing system" within the meaning of 47 U.S.C. § 227(b)(1)(A). Indeed, Plaintiff was never a customer and/or debtor of ARM or ARM's clients, nor had she ever had any dealings with ARM whatsoever before ARM began calling her. In fact, ARM's representatives repeatedly asked for someone other than Plaintiff – a person whom Plaintiff did not know and with whom Plaintiff had no connection to whatsoever.

29. Telephone calls made to Plaintiff's cellular phone by ARM were not "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

30. Telephone calls to Plaintiff's cellular phone made by ARM utilized an "artificial or prerecorded voice" and an "automatic telephone dialing system" for non-emergency

purposes and in the absence of Plaintiff's prior express consent violated 47 U.S.C. § 227(b)(1)(A).

31. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on ARM to demonstrate that Plaintiff provided it with prior express consent within the meaning of the statute.[15]

**RADIUS' VICARIOUS LIABILITY**

32. Radius is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

33. Radius acquired ARM in or around October of 2014.

34. On information and belief, Radius and ARM share unity of ownership. On information and belief, the current president of ARM, Joe Burch, is an Executive Vice President of Radius. On information and belief, Mr. Burch is in charge of the ongoing operations at ARM.

35. The FCC has stated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the TCPA*, CG Docket No. 02-278, Declaratory Ruling, 23 FCC Rcd 559, 564-65 (¶ 10) (2008) ("2008 FCC Declaratory Ruling") (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

36. The FCC has explained that its rules generally establish that the party on whose behalf the call is made bears ultimate responsibility for any violations. *See In re Rules &*

---

[15] *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

*Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

37. ARM made the autodialed and prerecorded message calls described here in "on behalf of" Radius within the meaning of the FCC's Declaratory Rulings and 47 U.S.C. § 227(c)(5).

38. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone calling "may be held vicariously liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party" callers. *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules,* CG Docket No. 11-50, Declaratory Ruling, 28 FCC Rcd 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

39. Radius is directly liable for the calls placed by ARM because it maintains control over its agent ARM's actions, both as to calling and other debt collection activities. For example, Radius' Vice President Joe Burch is President of ARM. Mr. Burch controls all ongoing operations for ARM, including its calling and related debt collection practices.

40. As such, Radius was legally responsible for ensuring that ARM complied with the TCPA, even if Radius did not itself make the calls.

41. Radius knew (or reasonably should have known) that ARM was violating the TCPA on its behalf, and failed to take effective steps within its power to force the caller to cease that conduct.

42. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46).

## CLASS ACTION ALLEGATIONS

43. Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated (hereinafter referred to as "the Class").

44. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> All persons in the United States who received a call from ARM from an automated telephone dialing system and/or utilizing a prerecorded voice on or after November 1, 2014, for whom ARM cannot provide evidence that the Class member provided ARM his or her cellular telephone number.

Collectively, all these persons will be referred to as "Class members." Plaintiff represents, and is a member of, the Class. Excluded from the Class are Defendants and any entities in which Defendants have a controlling interest, Defendants' agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

45. Plaintiff proposes the following Subclass, subject to amendment as appropriate:

> All persons within the United States who, between November 1, 2014 and the present, (1) received a non-emergency call to their cellular telephone numbers; (2) through the use of an automatic telephone-dialing system or an artificial or prerecorded voice; (3) from ARM; (4) regarding the collection of alleged debts in connection with ARM's customer accounts; and (5) who were not the account holders at the time of the calls.

Collectively, all these persons will be referred to as "Subclass members." Plaintiff represents, and is a member of, the Subclass. Excluded from the Subclass are Defendants and any entities in which Defendants have a controlling interest, Defendants' agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

46. Plaintiff does not know the exact number of members in the Class or Subclass, but on information and belief, the number of Class and Subclass members at minimum is in the thousands.

47. Plaintiff and all members of the Class and Subclass have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, depletion of their cellular phone battery, and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

48. This Class Action Complaint seeks injunctive relief and money damages.

49. The joinder of all Class and Subclass members is impracticable due to the size and relatively modest value of each individual claim. The disposition of claims in a class action will provide substantial benefit to the parties and the judicial economy of the Court in avoiding a multiplicity of identical suits. The Class and Subclass can be identified easily through records maintained by Defendants.

50. There are well defined, nearly identical, questions of law and fact affecting all Class and Subclass members. The questions of law and fact involving the Class and Subclass claims predominate over questions which may affect individual Class and Subclass members. Those common questions of law and fact include, but are not limited to, the following:

a. Whether non-emergency calls made to Plaintiff and Class and Subclass members' cellular telephones used an automatic telephone dialing system and/or an artificial or prerecorded voice;

b. Whether such calls were made by Defendants;

c. Whether Defendants can meet their burden of showing they obtained prior express consent (i.e., consent that is clearly and unmistakably stated) to make such calls;

d. Whether Radius is vicariously liable for the calls placed by ARM;

e. Whether Defendant's conduct was knowing and/or willful;

f. Whether Defendants are liable for damages, and the amount of such damages; and

g. Whether Defendants should be enjoined from engaging in such conduct in the future.

51. As a person who received numerous and repeated telephone calls using an automatic telephone dialing system and an artificial or prerecorded voice, without her prior express consent within the meaning of the TCPA and Rules, Plaintiff asserts claims that are typical of each Class and Subclass member. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass, and has no interests which are antagonistic to any member of the Class or Subclass.

52. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes, including claims under the TCPA.

53. A class action is the superior method for the fair and efficient adjudication of this controversy. Class wide relief is essential to compel Defendants to comply with the TCPA. The interest of Class and Subclass members in individually controlling the prosecution of separate claims against Defendants is small because the statutory damages in an individual action for the violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and prerecorded and the Class and Subclass members did not provide prior express consent, as required under the statute, to authorize such calls to their cellular telephones.

54. Defendants have acted on grounds applicable to the Class and Subclass, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class and

Subclass as a whole appropriate. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

## FIRST COUNT

## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*

55. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

56. The foregoing acts and omissions of ARM constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227, *et seq*.

57. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class and Subclass are entitled to treble damages of up to $1,500.00 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

58. Plaintiff and all Class and Subclass members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future. Plaintiff and Class and Subclass members are also entitled to an award of attorneys' fees and costs.

## SECOND COUNT

## STATUTORY VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

59. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

60. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq*.

61. As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class and Subclass members are entitled to an award of $500.00 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

62. Plaintiff and Class and Subclass members are also entitled to and do seek injunctive relief prohibiting Defendants' violation of the TCPA in the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class and Subclass members the following relief against Defendants:

A. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future;

B. As a result of Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class and Subclass member treble damages, as provided by statute, of up to $1,500.00 for each and every violation of the TCPA;

C. As a result of Defendants' violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class and Subclass member $500.00 in statutory damages for each and every violation of the TCPA;

D. An award of attorneys' fees and costs to counsel for Plaintiff and the Class and Subclass;

E. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems

appropriate, finding that Plaintiff is a proper representative of the Class and Subclasses, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Class and Subclasses;

F. Such other relief as the Court deems just and proper.

Dated: January 16, 2019

Respectfully submitted,

**GINA BELLENGER**

/s/ *Andrew Shamis*
Andrew J. Shamis, Esq.
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave., Suite 1205
Miami, FL 33132
Telephone (305) 479-2299
Facsimile (786) 623-0915
Email: efilings@shamisgentile.com
Florida Bar # 101754

**THE LAW OFFICES OF JIBRAEL S. HINDI, PLLC**
Jibrael S. Hindi, Esq.
110 SE 6th Street
Ft. Lauderdale, FL 33301
Tel: (954) 907-1136
Fax: (855) 529-9540
jibrael@jibraellaw.com

**KOZONIS & KLINGER, LTD.**
Gary M. Klinger (*pro hac vice forthcoming*)
4849 N. Milwaukee Ave., Ste. 300
Chicago, Illinois 60630
Phone: 312.283.3814
Fax: 773.496.8617
gklinger@kozonislaw.com

*Attorneys for Plaintiff and the Proposed Classes*